Good morning. May it please the Court. My name is Laura Alexander, and I've been appointed to represent the appellant in this case, Mr. Fields. At its core, this is a case about a man who did everything that was required of him, and then he did more. But still, the District Court dismissed his claim for failure to exhaust. The defendants in this case seek to turn the PLRA's exhaustion requirement into an interminable labyrinth to which prison officials can continue to add twists and turns, forever trapping an inmate's appeal in the internal prison grievance process. This is contrary to both the text and the purpose of the PLRA. At the outset, I want to make exceptionally clear what did and did not happen in this case. The defendants have never alleged that Mr. Fields procedurally defaulted his grievance. Instead, they allege that Mr. Fields' grievance was canceled at the second level of formal review. But they don't allege, and they have not provided to this day, any reason for that cancellation. It's undisputed in this case that at the first formal level of review, Mr. Fields' complaint was classified as a staff complaint, and he was told that it would be handled through a confidential administrative investigation and that he would not be told the results of that investigation. Under this Court's precedent in Brown v. Vailoff, his complaint was at that point exhausted. Nevertheless, Mr. Fields filed an appeal to the second formal level of review. There, it is undisputed that Mr. Fields received no response whatsoever. It's further undisputed that this is in direct contradiction of the State's own regulations. The Grannis letter attached to your the R&R of the magistrate said that if Mr. Fields disagreed with the rejection, he should contact the appeals coordinator. Is there anything in the record that indicates that he made any effort to contact the appeals coordinator? Yes, Your Honor. Mr. Fields received that letter at the third level of review. Oh, that was the third letter. That's correct. So I jumped one level ahead. As you wish. But we don't contend that Mr. Fields contacted the appeals coordinator. What we do contend is that despite not having received a response at the second level of review, and despite the fact that his claim was twice exhausted, because under the precedence of the five circuits that have considered this question, when a prison fails to respond to a prisoner's grievance, that exhausts the grievance. So despite that, Mr. Fields appealed to the third level of review, and that's when he received the Granis letter in reply. And that letter said that the director's level would not consider Mr. Fields' appeal on the merits because prison officials had not completed the form at the second formal level of review, and that at that second level, Mr. Fields' complaint had been withdrawn, rejected, or canceled. Now, this was the first notice that Mr. Fields had of what had happened to his appeal at the second level of review. But by this point, he'd already pursued his claim to every level of the prison grievance process, was, therefore, for this third reason, exhausted. But to answer your question, Judge Cowan, that letter did say that he could he should contact the appeals coordinator, but what that letter did not say and what the defense has not said is what the appeals coordinator could possibly have done for him. The prison's regulations provide no mechanism for an appeals coordinator to uncancel a claim, and there's no suggestion in the regulations that there is any Moreover, Mr. Fields had no explanation for why his appeal was canceled, and the defendant's position now is that the record has none, and so it's not at all clear what he could have argued against this blanket refusal to consider his appeal. Your position is that because of the second level or the third level, even though he didn't get answered at the second level, but at the third level, he didn't go forward with the appeals coordinator, and your position is nothing could be done, but there's nothing in the record that indicates that it couldn't be processed if he contacted the appeals coordinator. I didn't see anything that indicated that the appeals coordinator was unable to do anything. Yes, Your Honor, and I would say several things. First, by the time Mr. Fields received the Grannis letter, his appeal had already been exhausted at least twice, at the first level under Brown v. Vailoff and at the second level from the failure to respond. Second, the PLRA does not require that a prisoner jump through every hoop that prison officials make up in the course of the process. It requires that the prisoner comply with the prison's own regulations. Here, Mr. Fields did that. Now, it's true that the prison put this additional hoop in front of him of talking to the appeals coordinator, but what they didn't do is suggest that by jumping through that hoop, he could obtain any relief. And the Supreme Court has made clear, and this Court has made clear, that a prisoner is only required to remedy to exhaust remedies that are available to him, and it's not at all clear from the Grannis letter that further remedies were available to him, and the defendants have not suggested any remedies that were available to him. Now, in dismissing Mr. Fields' claim, the district court and the magistrate judge both erred in placing the burden of proof on Mr. Fields to prove exhaustion when this Court and the Supreme Court's precedent could not be clearer. The failure to exhaust is an affirmative defense, and the defendants bear the burden of pleading and proving it. The magistrate judge's opinion is replete with references to Mr. Fields' failure to prove that he had exhausted his claims. The district court compounded this error by the magistrate judge because it had before it the Grannis letter. Now, that letter is important for two reasons. First, it shows that Mr. Fields, contrary to the magistrate judge's finding and contrary to the defendant's affidavit, did pursue his appeal to the director's level. Second, as I just alluded to, the Grannis letter directly contradicted the affidavit submitted by the defendants that was the only evidence relied on by the magistrate judge in finding that Mr. Fields had failed to exhaust his claim. Namely, that's the affidavit of Mr. Castillo which said, in relevant part, Mr. Fields' complaint was canceled at the second level and Mr. Fields did not pursue his complaint to the director's level. Well, as the Grannis letter from the defendant's own files show, he did pursue his complaint to the director's level, and this casts serious doubt on the veracity of the Castillo declaration as a whole. In light of this evidence, Mr. Fields' own affidavit, and this letter from the defendant's own files directly contradicting their affidavit, it's impossible to see how the district court could have found against Mr. Fields an exhaustion if it had properly placed the burden on the defendants. Backing up on to the affirmative defense, and you're quite correct, that's an affirmative defense, but at some point, is the jurisprudence quite clear that once a defendant makes a showing of the affirmative defense, that then you have to come forward to show that it's suspicious or not credible in some way? And they certainly came forward with this letter saying contact the appeals coordinating person. Judge Cowen, you're certainly correct that the burden can shift and that once the defense has met their burden, it becomes Mr. Fields' responsibility to rebut that evidence. And that's exactly what he did here. He presented the Grannis letter. It wasn't put into the record by the defendants, despite the fact that it was their letter. Mr. Fields attached that letter to his objections to the magistrate judge's report. And that letter directly contradicted the only evidence that the defendants had submitted a failure to exhaust, namely the Castillo Declaration. And it also independently showed that Mr. Fields pursued his appeal to every level of the prison and grievance process. And that's all that he was required to do. Now — Counsel, assuming that you're correct, what is it that we're to do now? Send it back to the district court for trial on — Yes, Your Honor. It suggests that Mr. Fields has properly exhausted his claims, and so the correct result would be to send it back and allow the proceeding to go forward. Now, it may or may not make it to trial, but certainly Mr. Fields deserves a chance to bring his claim in court. Well, it goes back, what, for an evidentiary hearing as to whether he exhausted or not, or an evidentiary hearing to — or what? What does it go back for? Certainly, Your Honor. We contend that if the district court — in this case, the district court dismissed Mr. Fields' claim for failure to exhaust, and we contend it was error for them to do that without holding an evidentiary hearing, but it's not our position that if this case were remanded, if this court were to find that that finding of failure to exhaust was an error, that an evidentiary hearing is required. So if I understand your answer, let's see if I can rephrase it and make sure I understand it. Your primary position is that as a matter of law, the facts show that exhaustion did occur, as demonstrated by the Grannis letter, and therefore, the remand should be for further proceedings on the merits of the claim, and that your fallback position is if we don't find it as a matter of law, there's at least an issue of fact as to exhaustion that would presumably have its own evidentiary hearing first. Is that an accurate recap? That's correct, Judge Graber. The only thing I would add is that we believe there are three independent reasons why, as a matter of law, Mr. Fields exhausted his claim. At the first level of review, this Court's decision in Brown v. Vailoff. At the second level of review, the numerous precedents from other circuits establishing that when prison officials fail to respond, that exhausts a prisoner's claim. And finally, the Grannis letter, which shows that Mr. Fields in fact pursued his claim at every level of the grievance process. If the Court has no further questions at this point, I would reserve the remainder of my time for rebuttal. Certainly, you may do that. Good morning. May it please the Court. My name is Barry Alves, and I represent the defendants. There are two issues on appeal. First, whether the district court committed clear error in concluding whether plaintiff did not exhaust his administrative remedies. Second, whether there was abuse of discretion when it held plaintiff was not entitled to counsel. On the first issue, the standard of review is clear error. On the exhaustion issue, it's a mixed standard of review. When looking at the law, it's de novo. But when looking at the factual findings, which is all we're doing here today, it's a clear error standard. While no one disputes here the law of exhaustion as an argument for any extension, it appears all the magistrate had to do here was apply the facts to the law. Therefore, it's a clear error standard that has to be assessed at two different times. When the motion was made, the motion to dismiss, those finding recommendations, we have to make that analysis there, and then the second time, when they move for reconsideration. And the inevitable ---- Sotomayor, let me just cut to the heart of what concerns me about your case. What is the import, both factually and legally, of the Granis letter? The Granis letter, if I may, kind of we ---- it depends on what track you get there. Because it's been argued over and over again here that there was no response and that it was unprocessed at the second level. We dispute that because it was canceled, and canceled as a form of screening. And we know from Woodford v. Noe that if you get screened out at the first level or the second level, just because you send something to the director's level doesn't mean you exhaust it. Well, let me just ---- you're obviously very knowledgeable about all the procedures here, but the end of the Granis letter says, This decision exhausts the administrative remedy available to the appellant within the CDC. Okay. So we have in hand a letter here that says, I am rejecting your grievance, and this now exhausts your remedies. So doesn't that exhaust his remedies? I don't think that's what the letter says. What the letter is referring him to do is to go back to the second level. And I'm not trying to duck the question, because I think there's two different ways you can get there on two different tracks. But in fact, that letter supports Brown. Brown actually favors our position. Because what happens here is the director's level. Again, looking at Woodford will give you some reference for that. The director's level only does decisions on the merits, that if there's a screening or if it's unclear, they're not going to decide that. If you could make an end run and just send something to the director's level, then every grievance would go to the director's level. But they can screen. They can say, no, you did not get a decision. You have to go back. And that's exactly what happened here. Because there's ---- and that's what they've said. I don't understand that. Would you look at the letter and tell me what in that ---- in the basis, in the actual letter, it's one page, it's from ---- I have page 610 at the bottom. I'm sure it's found in more than one place in the record. And it appears to examine the argument on the merits and to say that there's no reason to go back and deny on the merits an explanation. Are we looking at the March 24, 2003, letter from Grannis? No. I'm actually looking at May 28, 2003. Well, that's the stamp date on it. Because we ---- Am I looking at the wrong document? Yes. There's two different grievances. He did exhaust a claim. And that was on the raw sewage claim. And that went to trial. If you look at ----  That's the claim. All right. So that's the wrong Grannis letter. Absolutely. Okay. So if you look in the supplemental experts, our experts, that's page 431. And that's the huge distinction. They say we do director's level reviews. And your grievance has been canceled or withdrawn. Now, there's no dispute in the record that the grievance was canceled. So while it may contain extra verbiage, it's saying, look, your appeal has been canceled. Now, to the extent you don't think that's right, you need to go back to the second level. And you can get a second-level review. At that point, the appeals coordinator, who they say there's no authority, he certainly has the authority to reinstate appeal. That comes ---- that's clear in the record. And I can get a cite for you for that if there's any dispute over that. But what they're saying is go back, because to the extent they're not going to process it, it certainly appears reasonable from the record that they're willing to take  it. If he sent it back to the second level and they said, no, you know what, tear it up, we're not going to do it, then it would be clear that it would allegedly fall within the unprocessed from Brown, but it certainly wouldn't have no relief available because the district court ---- sorry, the director's level wants clarification. To the extent they said, no, we're not going to do it, it could have come back. But more importantly, he has the chance that after it's been screened for reconsideration he had both of those options. Either way, he gets back to the director's level and he chose to do nothing. He's the person who stopped this process. And that is the letter, because there are two different ---- I see what you're saying. Okay. He did not get a director's level review on the merits. The fact that his grievance was screened and he later sent that screen out to the director's level does not exhaust. Those two things do not equal, and that runs completely contrary to Woodford v. Noe, where they said proper exhaustion is required and you must move through each step. And there is the other huge distinction is that they continue to say that nothing happened at the second level and that this grievance was unprocessed. The only evidence, and they cite that the record is brief, but all of the evidence is in our favor. The record says that it was canceled. And cancellation is a form of screening. If you go to Title 15, 3084.4d from the 2003 Code, canceled, that is the only place cancellation will appear anywhere in Title 15. And that refers to a plaintiff's refusal to participate in the process. Because it only appears in one place, we can draw the inference of what happened here. More important, looking at the record, there's significant evidence that at the first level of review, the plaintiff had indicated to the officers interviewing him that, one, the problem no longer was occurring, and that, two, they explained to him that he wasn't being treated differently than any other inmate. So we know that canceling is proper. It certainly appeared to these officers that the problem had been resolved. So there is evidence to support the cancellation. And the fact that the grievance was canceled and that cancellation is a perfectly proper form of screening is undisputed. They will say that the particular facts are not fully flushed out, but plaintiffs refused to acknowledge they didn't put any evidence in the record. And when they talk about burden, that's exactly what happened here. We met our burden as the moving parties by saying he did not get up to the director's level. And you can't just send a letter to the director's level. You get a decision on the merits at the informal level, a decision on the merits at the second level, and only after obtaining those two steps can you get to the director's level. Here, no one disputes that he got through the first level, but he was screened at the second. And after that screening, he cannot simply send a letter to the director's level and move forward. What does the record show is what the appeals coordinator can do? His power to reinstate it to another level or to? It wouldn't be in the declarations, but Title 15-3084.3 would say that if you look there, the law indicates that the appeals coordinator has broad discretion. Okay. So that's a statutory office. Yes. And it's a statutory office, and there's no dispute that the appeals coordinator is always the bridge which everything comes in and out of. That's where they go. And they gave him the opportunity to go forward. The other thing that the Plaintiff's counsel refuses to acknowledge, it wasn't perfectly clear from the record, but it is in the record. They continue to assert that the fact that he asked for an investigation and he got that, and it was processed as a staff complaint, that there was nothing more that he could obtain, and they fall within Brown. However, the fact is, is he actually asked for three things, one, an investigation, two, for the officers to be fired. But most importantly, page two of the grievance, and again, there are two grievances here, just for the record. It's 02-3865, and that can become a little confusing. For appellant's excerpt of the record, it is page 596. He also asked for a transfer to a different unit of the prison to make sure this didn't happen in the future. While he got his investigation, no one disputes that he did not get the transfer, and that was still available to him. The Secretary has the power to grant him any relief. So obviously, the fact that this still falls, Brown still favors us, even if that were not the case. But the fact is, he did not get everything. And once he decided after the screen-out that he wanted to move forward, he contacted the director's level. What he should have done was go back to the appeals coordinator, and they do not dispute that they didn't do that. I'd like to briefly address the failure to appoint counsel argument. As a preliminary matter, their argument would mean that this Court has been applying the wrong standard for the last 13 years. The PLRA was passed in 1996, and the exceptional circumstances test has been applied as recently as this year. There's nothing in the statute that requires that, though. Certainly. And that's the primary point goes to the statute that says it's inconsistent, because what we know is that the PLRA says is that counsel may be appointed and there is no standard of review. And their point is that somehow it's inconsistent with Ninth Circuit law. But the Ninth Circuit law says that they may appoint counsel and exceptional circumstances is the test. So their primary point is that somehow PLRA is inconsistent with the Ninth Circuit test, but both say may. One doesn't give a standard. So if the statute doesn't give a standard, it can't undermine what the circuit is doing in terms of appointing counsel. While it's not – while the test they advocate is not – excuse me – while the language of the PLRA is not inconsistent with what the Ninth Circuit is doing, what they are advocating would be. The purpose of the PLRA is to streamline and to make this process more simple, speed it up. And that would be completely inconsistent by broadly expanding when counsel should be appointed. And no matter how far they move the goalposts, it – counsel was not necessary in this case. It was not – while obviously presenting a case is difficult, it was not a complex case. The claim that moved forward, he said, I had raw sewage in my cell for 30 days. It's very easy to explain that to a jury. And the jury was not persuaded by the evidence he presented. And the point regarding the medication, it's clear from the record that it – that comes up very late in the trial. And his ship has sailed. And he makes this offhand point. And the judge, who had observed him for several days, makes the point and said, look, I've been observing you that you have not raised that, and that is certainly not the case. And he makes a very clear record on the fact that there was no problem with his medication. I'd like to make – and getting back to my point, Your Honor, about depending on what track you get there, and Brown and whether or not – the director's level letter. If you conclude that it's a screen act and not unprocessed, Woodford v. Ngo, proper exhaustion, says that letter is – is just empty. It's an excess verbiage that they're saying, look, you've been screened out. To the extent you want to reconsider that with the prison, go ahead and do that. And by no means can it exhaust his administrative remedies. But on the second, if for some reason it's concluded that it was either unprocessed or there weren't sufficient grounds, that letter under Brown, which is supported by the Jernigan case, which is very, very similar here, is – it supports both the Jernigan case and – and Brown, because what the director's level is saying is, okay, it's either unclear what happened here or you've been screened out. And to the extent you can get that resolved one way or the other, we'll take it back. And the purpose of the PLRA is so we don't tie up the district courts and so we don't end up here, is we should give this every chance to work out at the three levels. And he had that chance. He had that chance, and he chose to stop. And that's why we're here today, based upon his decision, not what happened at the second level, where they have to concede that, while the record is thin, all of it supports screening. And they had that chance, and he chose not to do it. And that's why we're here. That's why the verdict of the Court should be affirmed. Thank you. Thank you, counsel. Ms. Alexander, you have quite a bit of rebuttal time remaining. Thank you, Your Honor. I believe that Mr. Allison misunderstood our position. He claims that we say that the appeal was never decided at the second level of review. That is not our position. Although that was at one point Mr. Field's main point of contention, we say that even if Mr. Field's appeal was canceled, he was never told of that result. And under the precedent of five circuits, the only five to have considered this issue, including the Tenth Circuit where Jernigan is from, that exhausted his claims. And Jernigan, I would point out, the Court did not say anything different. The Court said where prison officials fail to respond to a prisoner's grievance, his claim is normally exhausted. He does not need to go to any further levels. But on the particular facts of Jernigan, under the Oklahoma State prison regulations, a prisoner who had not received an appeal at the second level could write to the third level and explain, I did not receive a response at the second level. California prison regulations provide no such mechanism. And Mr. Jernigan or Mr. Al's reference to 3084.3 is not on point. The appeals coordinator, yes, has broad discretion to screen appeals, but there's nothing in 304 3084.3 that suggests that an appeals coordinator can undo a previous screening of an appeal. Mr. Al's further faults, Mr. Field's, were failing to get a decision on the merits at the director's level. First of all, I just reiterate that our position is that Mr. Field's had already exhausted his claim twice by the time he got to the director's level, once at the first level under Brown. How can that be, though, if the letter that he got did say to him, you have further opportunity to have this issue looked at if you go talk to the appeals coordinator? And the whole premise of Booth is if there is, in fact, some further potential relief, exhaustion has not happened. And here, the last item in the chain seems to be a suggestion that there is still the potential for relief within the prison system. So I guess I don't – I'm not sure how we can close our eyes to that, what appears to be a remaining opportunity. Sure, Judge Graber. What I would say is this, two things. First, I think that to hold that because Mr. Field's, despite the fact that under Brown he didn't have to go to the second level and under the precedence of the Five Circuits to consider the issue, he didn't have to go to the director's level, the fact that Mr. Field's did so out of an abundance of caution or out of a desire to expedite the process if he ever did get to the district court by dispensing entirely with the question of exhaustion should not be used to punish Mr. Field's.  So it's not going to be a question of punishment. I know it must seem that way, but the premise of it is if there is the possibility of receiving relief, the courts won't intervene yet. And here we have some evidence that there remains that possibility, whether it had to be extended to him or it was accidentally extended to him or he got there by an abundance of caution, don't we have to pay attention to that possibility? Well, even if Your Honor finds that despite the fact that he twice exhausted before he got to that point, that somehow that re-unexhausted his claim or that that has the potential to, I would just go back to the basic point about the PLRA that this Court and the Supreme Court has made, that an inmate is only required to exhaust what remedies are available to him. And the fact that Mr. Field's was told in the Granis letter that if he had a problem with the decision, he should talk to the appeals coordinator, doesn't suggest that further remedies are available to him. All it suggests is that is his only option, but there's nothing in the regulations that allows the appeals coordinator to somehow reinstate his appeal. And now, at this point we're going to appeal is screened out at the second level. What is your view that at that point there's automatically a right to go to court? No, Your Honor, that's not our position. Obviously, there are circumstances. Mr. Alves alluded to one, namely, where a prisoner refuses to participate in an investigation. Under those circumstances, his appeal is properly canceled, and it would fly in the face of the PLRA to say that, well, because the prisoner refused to participate in an investigation and he got his appeal screened out, that somehow gives him a right to court. That is certainly not our position. But here, where there's a very strong dispute about the merits of that cancellation and whether that cancellation was proper, and Mr. Alves suggests now, here, for the very first time, some basis for that cancellation, but the defendant's position in their briefs before this Court was that we don't know why that appeal was canceled. So the letter said if he disagrees with the cancellation, he should see the coordinator. In other words, if he disagreed that it was properly canceled, he should go to the coordinator. Yes, Your Honor, it does say that. And this just goes back to my fundamental point, that the way that the defendants want to view the PLRA's exhaustion requirement is that as long as prison officials continue to put one hoop after another in front of the prisoner, he's forced to remain within the prison grievance process. But the PLRA, the Supreme Court, and this Court have made clear the prisoner is required to comply with the prison's regulations. He can't make the prison comply with its own regulations, and he can't be faulted when it does not. If the Court has no further questions. Thank you very much. Again, our thanks for participating in the pro bono representation project, and both of you for very helpful arguments. The case is submitted.
judges: Cowen, Graber, Bybee